UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Peter Ackerman, International Center on Nonviolent Conflict, | ) ) ) |
| Plaintiffs/ Counterclaim Defendants, | ) ) ) ) |
| v. | ) Case Number 1:16-CV-02052 RDM |
| Steven York, Miriam Zimmerman, York Zimmerman Inc., | ) ) ) ) |
| Defendants/ Counterclaim Plaintiffs. | ) ) ) ) |

## PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15(a), Plaintiffs Peter Ackerman and the International Center on Nonviolent Conflict move for leave to amend their complaint.  As explained in the memorandum filed in support of this motion, Plaintiffs seek to amend their complaint to conform their allegations to the evidence obtained through discovery.  Plaintiffs attach their proposed amendment as Exhibit 1 to this motion.

November 20, 2017

Respectfully submitted,

/s/ William M. Bosch
William M. Bosch (D.C. Bar No. 444247)
John Robinson (D.C. Bar No. 1044072)
ARNOLD & PORTER
   KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC  20001-3743
Telephone: +1 202.942.5000
E-mail:  william.bosch@aporter.com

*Counsel for Plaintiffs/Counterclaim Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Peter Ackerman, International Center on Nonviolent Conflict, | ) ) ) |
| Plaintiffs/ Counterclaim Defendants, | ) ) ) |
| v. | ) Case Number 1:16-CV-02052 RDM |
| Steven York, Miriam Zimmerman, York Zimmerman Inc., | ) ) ) |
| Defendants/ Counterclaim Plaintiffs. | ) ) ) |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR LEAVE TO AMEND THEIR COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 5

I.      THE COURT SHOULD GRANT LEAVE TO AMEND ........................................ 5

II.     THERE HAS BEEN NO UNDUE DELAY, BAD FAITH, DILATORY
        MOTIVE, OR REPEATED FAILURE TO CURE DEFICIENCIES ....................... 7

III.    AMENDMENT WOULD NOT BE FUTILE ........................................................... 9

CONCLUSION .................................................................................................................. 10

CERTIFICATE OF SERVICE ......................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>:                                                                                            <u>Page(s)</u>:

*Bank v. Pitt*,
    928 F.2d 1108 (11th Cir. 1991) ................................................................................ 5

*Belizan v. Hershon*,
    434 F.3d 579 (D.C. Cir. 2006) ................................................................................. 5

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*,
    148 F.3d 1080 (D.C. Cir. 1998) ............................................................................... 7

*Cmty. for Creative Non-Violence v. Reid*,
    490 U.S. 730 (1989) ............................................................................................. 6, 9

*Dooley v. United Tech. Corp.*,
    152 F.R.D. 419 (D.D.C. 1993) ................................................................................ 8

*Firestone v. Firestone*,
    76 F.3d 1205 (D.C. Cir. 1996) ................................................................................. 5

*Foman v. Davis*,
    371 U.S. 178 (1962) .......................................................................................... 5, 7, 8

*Hourani v. Mirtchev*,
    282 F.R.D. 278 (D.D.C. 2012) ........................................................................... 9, 10

*Smith v. Cafe Asia*,
    598 F. Supp. 2d 45 (D.D.C. 2009) ....................................................................... 5, 7

*Sundberg v. TTR Realty, LLC*,
    109 A.3d 1123 (D.C. 2015) ..................................................................................... 9

*In re Sunrise Sr. Living, Inc. Derivative Litig.*,
    550 F. Supp. 2d 1 (D.D.C. 2008) ........................................................................ 9, 10

*In re Vitamins Antitrust Litig.*,
    217 F.R.D. 30 (D.D.C. 2003) .................................................................................. 8

*United States v. Hicks*,
    283 F.3d 380, 387 (D.C. Cir. 2002) ........................................................................ 5

**<u>Statutes, Rules and Regulations</u>**

Fed. R. Civ. P. 15 ................................................................................................... 1, 5, 7

6 Charles Alan Wright, et al., Federal Practice and Procedure §§ 1474, 1488  (3d
    ed. April 2017 update) ......................................................................................................... 5, 6, 7

## INTRODUCTION

Plaintiffs Peter Ackerman and the International Center on Nonviolent Conflict respectfully request leave to amend their complaint.  This case concerns a dispute over the ownership rights in certain documentary films on nonviolent civil resistance.  Plaintiffs' original complaint sought a declaratory judgment that Plaintiffs are co-owners of the films by virtue of joint authorship under the Copyright Act.  In the alternative, Plaintiffs alleged that they held an oral or implied license to use the films.  Plaintiffs also asserted claims for fraud and unjust enrichment.

Plaintiffs seek leave to conform the allegations in their complaint to the evidence obtained through discovery.  Specifically, Plaintiffs seek leave to add claims of ownership under a work-for-hire theory, breach of contract, and negligent misrepresentation.  Plaintiffs also seek leave to reduce the scope of their fraud claim.

Defendants object to the amendment, but their objections is without merit.  As the Court is aware, Rule 15 establishes a liberal standard for amending the pleadings, providing that a court should "freely give leave when justice so requires."  Leave should be denied only where the party opposing amendment can establish undue delay, bad faith, prejudice, repeated failure to cure deficiencies, or futility—none of which are present here.  Accordingly, and for the reasons explained below, the Court should grant Plaintiffs' motion for leave to amend.

## BACKGROUND

Peter Ackerman is one of the world's leading authorities on nonviolent conflict.  Am. Compl. ¶ 22, ECF No. 18.  He holds a Ph.D. in International Relations from the Fletcher School of Law and Diplomacy at Tufts University and is the author of two books on strategic nonviolent conflict.  *Id.*

In the late 1990s, Ackerman met with Steven York, a filmmaker, to discuss making movies that would illustrate the principles of nonviolent conflict articulated in Ackerman's scholarship.  *See* <u>Exhibit 1</u>, Proposed Second Am. Compl. ¶ 29.  Ackerman and York agreed that Ackerman would be a co-owner of any films that were jointly created, and that, as a co-owner, Ackerman would have full, unfettered access to anything Ackerman and York created together, including the master copies of the films themselves.  *Id.*  The parties further agreed that Ackerman would have final approval on all of the films and would be able to use the films however he wanted as part of his mission to disseminate teaching and research on nonviolent civil resistance.  *Id.*

Consistent with this agreement, from 1999 to 2016, Ackerman collaborated with Defendants to produce, develop, and promote six documentary films on nonviolent civil resistance.  *See id.* ¶¶ 30, 65.  Ackerman provided substantive, creative contributions to the films. He, along with York, would select the stories he wanted the films to tell, the locations where they should shoot, and the characters they would use for the films.  *Id.* ¶ 40.  Ackerman sat with York for countless hours reviewing the films, and his contributions during these sessions were crucial to ensuring that the films conveyed Ackerman's teachings.  *Id.* ¶ 41.  During these sessions, Ackerman would provide input on the "dynamics" of the scene, including the narration, interviews, and video footage for the scene.  *Id.*

Over the course of this 17-year period, Ackerman paid Defendants approximately $20.9 million, including a salary of upwards of $500,000 a year.  *Id.* ¶¶ 7, 9.  During this time, Defendants worked for no one other than Ackerman.  *Id.* ¶ 7.  Ackerman told Defendants what films to make, when to make them, and ultimately had final say on the content of all of the films. *Id.*  Ackerman's substantial funding of Defendants—including paying their salaries and funding

their rent, overhead, and benefits—was always contingent on the parties' original agreement that Ackerman would jointly own all of the films together with Defendants. *Id.* ¶¶ 3, 7.

In 2002, Ackerman co-founded the International Center on Nonviolent Conflict, or "ICNC." *Id.* ¶ 26. ICNC is an independent, nonprofit educational foundation that develops and encourages the study and use of civilian-based, nonmilitary strategies aimed at establishing and defending human rights, democratic self-rule, and justice worldwide. *Id.* ¶ 27. Essential to ICNC's mission is its ability to screen and disseminate educational videos and other content about nonviolent resistance to interested recipients throughout the world. *Id.* ¶ 27. From 2002 to 2015, Ackerman and ICNC used and distributed the documentary films as they pleased, *id.* ¶ 69, which was consistent with Ackerman's original agreement with Steven York that he would be a co-owner of the copyrights in the films.

In 2014, Ackerman informed Defendants that he wished to gradually reduce his funding of Defendants, with all funding to cease by 2016. *Id.* ¶ 72. During this transitional period, Ackerman also informed Defendants that he and ICNC wished to make the films available online for free public viewing. *Id.* ¶ 73. Defendants were initially open to such a proposal, agreeing that they would begin handing over physical possession of certain materials, including valuable raw interview footage, to ICNC. *Id.* ¶ 74. In February 2016, however, Defendants told Ackerman that he would need to sign a license agreement and pay YZI a licensing fee in order to use the Documentary Films and that, even with such a license, he would have only limited rights to use some of the films, which would not include Internet streaming. *Id.* ¶ 77. This was the first time that Defendants ever objected to Ackerman's or ICNC's use of the films. *Id.* ¶ 78.

After making reasonable efforts to resolve this matter amicably, and faced with the prospect of a suit for copyright infringement if they were to make the documentary films

available on the ICNC website, on October 14, 2016, Ackerman and ICNC filed a complaint

against Defendants.  Count One of the complaint sought a declaration that Ackerman and ICNC

are joint owners of the films by reason of Ackerman's co-authorship of the films.  Compl. ¶¶ 53-

58, ECF No. 1.  In the alternative, Count Two sought a declaratory judgment that Defendants

granted Plaintiffs an oral or implied license to use the films, based on the parties' course of

dealing during their 17-year collaboration.  *Id.* ¶¶ 59-64.  The original complaint also asserted

claims for fraud, unjust enrichment, and an accounting.  *Id.* ¶¶ 65-79.

On December 16, 2016, Defendants moved to dismiss the complaint for lack of

jurisdiction.  The Court denied the motion on April 14, 2017.  Because Defendants indicated that

they might wish to challenge the sufficiency of the complaint's allegations through a motion for

judgment on the pleadings, the Court suggested that Plaintiffs file an amended complaint on or

before April 28, 2017.  Plaintiffs did so.  Defendants answered the amended complaint and filed

a counterclaim on May 26, 2017.  Plaintiffs answered Defendants' counterclaim, and the Court

held an initial scheduling conference on July 14, 2017, setting an October 1, 2017 deadline for

non-third-party, non-expert discovery.

The parties produced documents in September 2017 and took depositions of the

principals of both parties during the weeks of September 18 and 25, 2017.  Through document

and deposition discovery, Plaintiffs learned facts supporting claims of ownership through a

work-for-hire theory, breach of contract, and negligent misrepresentation.  At an October 25,

2017 status conference, Plaintiffs indicated that they wished to amend their complaint to add

these claims and to narrow the scope of their fraud claim.  The Court instructed the parties to

meet-and-confer on the issue.  On November 15, 2017, Defendants informed Plaintiffs that they

would oppose the amendment, without further explanation.

## ARGUMENT

Federal Rule of Civil Procedure 15(a) allows a party to amend a pleading with "the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Rule 15(a) accordingly allows "maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Belizan v. Hershon*, 434 F.3d 579, 584 (D.C. Cir. 2006) (quoting *United States v. Hicks*, 283 F.3d 380, 387 (D.C. Cir. 2002)). Rule 15(a) "severely restrict[s]" a district court's discretion in deciding whether to grant or deny leave to amend, *see Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), and "[i]t is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by [previous] amendments . . . [or] futility of amendment,'" *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (alterations in original) (quoting *Foman*, 371 U.S. at 182). "The defendant has the burden of showing why leave to file an amended complaint should not be granted." *Smith v. Cafe Asia*, 598 F. Supp. 2d 45, 47–48 (D.D.C. 2009).

## I.    THE COURT SHOULD GRANT LEAVE TO AMEND

This is the first time Plaintiffs have requested leave of court to amend their complaint.[1] Plaintiffs here seek leave to amend to conform their claims to the evidence, which is a classic and legitimate reason to amend. *See* 6 Charles Alan Wright, et al., Federal Practice and

---

[1] Although Plaintiffs amended their complaint once before to supplement their joint-authorship allegations, Defendants consented to (and in fact invited) that amendment. *See* ECF No. 24 at 15:8–10 ("[W]e would not be opposed to the plaintiff filing an amended complaint.").

Procedure § 1474 & n.10 (3d ed. April 2017 update) (hereinafter "Wright & Miller") (collecting cases where courts have allowed amendment to "change the nature or theory of the party's claim"); *see also id.* § 1488 ("It would be unreasonable to restrict a party's ability to amend to a particular stage of the action inasmuch as the need to amend may not appear until after discovery has been completed or testimony has been taken at trial.").

Plaintiffs seek to add claims of ownership under a work-for-hire theory, breach of contract, and negligent misrepresentation. *See* Proposed Second Am Compl. ¶¶ 87–95, 107–11. Plaintiffs first learned of the full evidentiary and factual bases for these claims through discovery. For example, document discovery revealed the extent to which Ackerman controlled the manner and means by which the documentary films were created, a key element of a work-for-hire claim. *See Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751 (1989). Discovery also revealed the full circumstances of the financial arrangement between Plaintiffs and Defendants, including the fact that Defendants received virtually no income from sources other than Plaintiffs during the period in question and were paid a salary by Plaintiffs, further supporting Plaintiffs' work-for-hire claim.

With respect to the breach-of-contract claim, Plaintiffs discovered evidence that in August 1999, Defendants entered into a letter agreement with Ackerman concerning the production of the theatrical version of the film *A Force More Powerful*. That agreement—which Ackerman testified memorialized the terms that the parties always understood would govern their relationship—provided that YZI and Ackerman would hold a joint copyright in the film. This evidence strongly supports Plaintiffs' breach-of-contract claim.

As to the fraud and negligent misrepresentation claims, Plaintiffs obtained additional evidence during discovery confirming that Defendants specifically represented in early 2015 that

they would transfer materials, including raw interview footage, to Plaintiffs, and make available online for free the latest film on which they collaborated.  In reliance on these promises, Plaintiffs continued to fund Defendants through 2015, paying them approximately $543,000.  In their proposed amended complaint, Plaintiffs seek to focus their fraud and negligent misrepresentation claims on these promises, reducing the amount of damages sought from over $20 million to only approximately $543,000 paid in 2015.

Although these legal claims are new, they do not "radically alter the scope and nature of the case."  *Smith*, 498 F. Supp. 2d at 48 (courts "favor proposed complaints that do not radically alter the scope and nature of the case").  The breach-of-contract claim, for example, focuses on the parties' original intentions regarding ownership rights in the films—a central issue of the joint authorship claim of the original complaint.  The work-for-hire claim focuses on the nature of the relationship between the parties and Ackerman's control over the production of the films, factors that were also relevant to the joint authorship and implied license claims of the original complaint.  And the amended fraud and negligent misrepresentation claims are simply *narrower* versions of the fraud claim that Plaintiffs originally pleaded in their prior complaint.  Thus, under Rule 15(a), amendment is appropriate to provide Plaintiffs an opportunity to test these new claims on the merits.  *Foman*, 371 U.S. at 182.

## II.    THERE HAS BEEN NO UNDUE DELAY, BAD FAITH, DILATORY MOTIVE, OR REPEATED FAILURE TO CURE DEFICIENCIES

"Rule 15(a) does not prescribe any time limit within which a party may apply to the court for leave to amend."  Wright & Miller § 1488.  "In most cases, delay alone is not a sufficient reason for denying leave."  *Id.*  "[I]f no prejudice is found as a result of the delay, the amendment will be allowed."  *Id.*; *see also Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1084 (D.C. Cir. 1998).  To show prejudice sufficient to justify a denial of leave to amend,

the defendant "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *In re Vitamins Antitrust Litig.*, 217 F.R.D. 30, 32 (D.D.C. 2003) (quoting *Dooley v. United Technologies Corp.*, 152 F.R.D. 419, 425 (D.D.C. 1993)).

There has been no delay or prejudice here. Plaintiffs informed the Court of their intention to amend at the status conference shortly following the close of discovery on October 1. Although the breach-of-contract and work-for-hire claims were not included in the original complaint, the parties exchanged broad document requests that would have encompassed any documents potentially relevant to these claims. Additionally, the facts underlying these claims were explored during depositions, and so there is no need for any additional discovery on these issues.

Moreover, on November 17, 2017, this Court, in connection with its Minute Order referring this matter to Magistrate Judge Harvey for mediation, also ordered that, if mediation is unsuccessful, the parties will have an additional 120 days to complete remaining fact discovery. If Defendants believe that additional discovery is required in light of the amendment, they may pursue such discovery during this 120-day window. Thus, there is no reason why Defendants would be prejudiced by any amendment.

Nor can Defendants establish any bad faith or dilatory motive. Plaintiffs are simply seeking an opportunity to test all claims supported by the evidence, as is their right under the federal rules. *See Foman*, 371 U.S. at 182. Plaintiffs have not gained any strategic advantage by bringing the claims now, and they would have brought them sooner had they obtained discovery earlier in the case.

Finally, Plaintiffs have not repeatedly failed to cure deficiencies in the complaint.  There has never been any deficiency in Plaintiffs' pleadings.  Defendants' motion to dismiss on jurisdictional grounds was denied.  Plaintiffs seek to amend here only to conform their claims to the evidence, not to cure any purported deficiency in the complaint's allegations.

## III.   AMENDMENT WOULD NOT BE FUTILE

To demonstrate futility, Defendants must "persuade the Court that the information is irrelevant and thus that the inclusion of it in an amended . . . complaint would be an exercise in futility."  *In re Sunrise Sr. Living, Inc. Derivative Litig.*, 550 F. Supp. 2d 1, 7–8 (D.D.C. 2008).  The Court need not conclude definitively that Plaintiffs would survive a motion to dismiss, only that they should be permitted the opportunity to try.  *Hourani v. Mirtchev*, 282 F.R.D. 278, 280 (D.D.C. 2012) ("Without concluding whether Plaintiffs' proposed amended complaint will ultimately survive a motion to dismiss, the Court cannot find—at this stage—that granting Plaintiffs leave to file a first amended complaint would be futile.").

There would be no basis for a motion to dismiss the proposed amended complaint.  The breach-of-contract claim is well pleaded and turns on a factual dispute about the intentions of the parties.  The work-for-hire claim likewise will turn on a fact-intensive analysis of the factors set forth in the Supreme Court's decision in *CCNV v. Reid*.  *See* 490 U.S. at 751.  Plaintiffs' allegations are also sufficient to state a claim for negligent misrepresentation under District of Columbia law.  *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C. 2015)  ("[A] plaintiff alleging negligent misrepresentations . . . must show (1) that the defendant made a false statement . . . . ; (2) that it involved a material issue; and (3) that the plaintiff reasonably relied upon the false statement or omission to his detriment." (alterations and internal quotation marks omitted)).

Even if Defendants were to contend that the proposed amended complaint were deficient in some way, the proper course is for the Court to allow the amendment and then provide the parties with an opportunity to brief a motion to dismiss. *See In re Sunrise Sr. Living, Inc. Derivative Litig.*, 550 F. Supp. 2d at 7–8; *Hourani*, 292 F.R.D. at 280. This is especially so given that Plaintiffs do not know what grounds Defendants might assert in a possible motion to dismiss, and so would not have an opportunity to respond to Defendants' arguments in briefing on this motion for leave to amend. Thus, if Defendants contend that amendment is futile because the proposed amended complaint fails to state a claim, the Court should first allow the amendment and then provide the parties with an opportunity to fully brief the issues.

## CONCLUSION

Plaintiffs easily meet the low burden for allowing leave to amend. Plaintiffs have sought amendment promptly and without undue delay, and Defendants will suffer no prejudice from the amendment. Accordingly, Plaintiffs' motion for leave to amend should be granted.

November 20, 2017                                Respectfully submitted,

/s/ William M. Bosch
William M. Bosch (D.C. Bar No. 444247)
John Robinson (D.C. Bar No. 1044072)
ARNOLD & PORTER
      KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC  20001-3743
Telephone: +1 202.942.5000
Fax: +1 202.942.5999
E-mail:  william.bosch@aporter.com

*Counsel for Plaintiffs/Counterclaim Defendants*

10

*Of Counsel*:

Roberta L. Horton
ARNOLD & PORTER LLP
601 Massachusetts Ave., NW
Washington, DC  20001-3743
Telephone: +1 202.942.5000
Fax: +1 202.942.5999
E-mail:  roberta.horton@aporter.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on November 20, 2017, the foregoing Plaintiffs' Motion for Leave to Amend was filed using the Court's CM/ECF system, which will send an e-mail notification to counsel of record.

/s/ John Robinson
John Robinson

12